A43

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED

09 MAR 25 AM 10: 18

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Magistrate Case No. |
| Plaintiff, ) | |
| ) | COMPLAINT FOR VIOLATION OF |
| v. ) | '09 MJ 1017 |
| ) | Title 8, U.S.C., Section |
| Jesus HERNANDEZ-Lopez (D1), ) | 1324(a)(2)(B)(iii)- |
| and ) | Bringing in Illegal Aliens |
| Jose Luis MARQUEZ-Gutierrez (D2), ) | Without Presentation |
| and ) | |
| Sergio LOPEZ-Contreras (D3) ) | |
| Defendants. ) | |

The undersigned complainant being duly sworn states:

On or about **March 24, 2009**, within the Southern District of California, defendants **Jesus HERNANDEZ-Lopez (D1), Jose Luis MARQUEZ-Gutierrez (D2),** and **Sergio LOPEZ-Contreras (D3)**, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely **Esther DOMINGUEZ-Albanil, Francisca NAVA-Armenta, Epigmenio VELASCO-Nieto, Mariela ESPITIA-Garcia,** and **Isaias GUTIERREZ-Benavides**, had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens, and upon arrival did not bring and present said aliens immediately to an appropriate immigration officer at a designated port of entry; in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii).

And the complainant states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

_____
SIGNATURE OF COMPLAINANT
Sara Esparagoza, United States Customs
and Border Protection Enforcement Officer

Sworn to before me and subscribed in my presence, this **25th** day of **March, 2009.**

_____
UNITED STATES MAGISTRATE JUDGE



## PROBABLE CAUSE STATEMENT

The complainant states that **Esther DOMINGUEZ-Albanil, Francisca NAVA-Armenta, Epigmenio VELASCO-Nieto, Mariela ESPITIA-Garcia,** and **Isaias GUTIERREZ-Benavides** are citizens of a country other than the United States; that said aliens have admitted they are deportable; that their testimony is material; that it is impracticable to secure their attendance at trial by subpoena; and that they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On March 24, 2009, at about 4:40 A.M. at the Otay Mesa, California Port of Entry vehicle entrance, a United States Customs and Border Protection (CBP) Officer noticed two similar white vans and a Chevrolet Blazer waiting to approach his booth for inspection and entry into the United States. The CBP Officer did not release the vehicle that was currently in his booth and conducted a computer query on the vehicle license plate number on the proceeding vehicle. In response to the query, the CBP Officer received a computer generated lookout identifying the vehicle as stolen. The CBP Officer notified the operations office of the alert. CBP Supervisors notified CBP Officers from the pre-primary roving team to inspect the three vehicles. Upon inspection of the vehicles, CBP Officers noticed numerous people sitting in the rear cargo area of the two white vans and numerous people in the Chevrolet Blazer. All occupants and vehicles were escorted to secondary for further inspection.

In secondary, sixteen individuals were removed from the rear cargo area of the first vehicle which was driven by **Jesus HERNANDEZ-Lopez (D1)**. Eight individuals were removed from the second vehicle which was driven by **Jose Luis MARQUEZ-Gutierrez (D2)**. Sixteen individuals were removed from the rear cargo area of the third vehicle which was driven by **Sergio LOPEZ-Contreras (D3)**. All forty individuals removed from the vehicles were determined to be undocumented aliens who were attempting to elude inspection to enter the United States. Five of the undocumented aliens were retained as material witnesses and are now identified as **Esther DOMINGUEZ-Albanil (Material Witness 1), Francisca NAVA-Armenta (Material Witness 2), Epigmenio VELASCO-Nieto (Material Witness 3), Mariela ESPITIA-Garcia (Material Witness 4)**, and **Isaias GUTIERREZ-Benavides (Material Witness 5).**

During a videotaped proceeding, D1 was advised of his Miranda rights. D1 acknowledged his rights and agreed to answer questions without the benefit of counsel. D1 admitted he has no document or other benefit that would permit his legal entry into the United States. D1 admitted he had planned to approach the inspection booth manned by the CBP Officer and once at the booth, he was to abscond from the port and flee into the United States. D1 stated the smugglers had given him a handwritten map to follow and avoid getting lost once in the United States. D1 stated he was to call the phone number on the handwritten map after successfully entering the United States. D1 stated in exchange for his role in the smuggling act, he would not have to pay the smuggling fee which he thinks was to be about $1,000 U.S dollars or more. D1 stated the smugglers were also going to provide him with a bus ticket to Anaheim, California in order for him to visit his grandmother.

**Continued on Page 2**



**Continuation of Probable Cause Statement**
**United States v. Jesus HERNANDEZ-Lopez et al.**

During a videotaped proceeding, D2 was advised of his Miranda rights. D2 acknowledged his rights and agreed to answer questions without the benefit of counsel. D2 admitted he has no document or other benefit that would permit his legal entry into the United States. D2 stated the vehicle in front of him was to abscond from the port which would allow his vehicle along with the vehicle behind him to flee into the United States. D2 stated was told to proceed northbound until he arrived at the 805 freeway and expect a phone call on the cell phone he was provided with. D2 stated in exchange for driving the vehicle with the undocumented aliens into the United States, he would not have to pay the smuggling fee of $3,800 U.S. dollars. D2 stated he intended to travel to Los Angeles, California to seek employment.

During a videotaped proceeding, D3 was advised of his Miranda rights. D3 acknowledged his rights and agreed to answer questions without the benefit of counsel. D3 admitted he has no document or other benefit that would permit his legal entry into the United States. D3 stated a vehicle two vehicles in front of him was to abscond from the port which would allow for his vehicle along with the vehicle in front of him to flee into the United States. D3 stated once he entered the United States, a vehicle would be waiting for him on the side of the road with the hazard lights on. A person from the vehicle was to board the van he was driving and take control of the van to take to an unknown location. D3 stated in exchange for driving the vehicle with the undocumented aliens into the United States, he would not have to pay the smuggling fee of approximately $2,000 U.S. dollars and was also to receive an additional $2,000 U.S. dollars. D3 stated he intended to travel to Los Angeles, California to seek employment.

On separate videotaped interviews, all five Material Witnesses declared they are citizens of Mexico without legal rights or entitlements to enter the United States. MW1 stated she was to pay a smuggling fee of $3,000 U.S. dollars and intended to travel to Santa Ana, California. MW2 stated she was going to pay a smuggling fee of $2,000.00 U.S. dollars and intended to travel to Oxnard, California. MW3 stated he was going to pay a smuggling fee of $2,000 U.S. dollars and intended to travel to Costa Mesa, California. MW4 stated she was going to pay a smuggling fee of $2,000.00 U.S. dollars and intended to travel to Los Angeles, California. MW5 stated she was going to pay a smuggling fee of $2,500 U.S. dollars and intended to travel to Salinas, California. All five Material Witnesses stated they intended to enter the United States to seek employment or reunite with family.